IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02183-MSK-MEH

STEPHEN LANE,

      Plaintiff,

v.

R.A. YOHN, Detective, and
THE CITY OF COLORADO SPRINGS,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Motion to Dismiss [filed November 14, 2012; docket #21] filed by the City of Colorado Springs ("the City") and Detective R.A. Yohn.  The motion is referred to this Court for recommendation.  (Dockets #25.)  The matter is fully briefed, and the Court finds that oral argument would not materially assist is adjudication of the motion.  For the reasons that follow, the Court respectfully RECOMMENDS that Defendants' Motion be **GRANTED**.

## BACKGROUND

I.     **Facts**

      The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff  in his Amended Complaint [docket #20], which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In addition to Plaintiff's Amended Complaint, the Court may also consider authentic copies of documents that are (1) referred to in the Amended Complaint; and (2) central to Plaintiff's claims without converting Defendant's Rule 12(b)(6) motion into a motion for

summary judgment. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Plaintiff's claims arise from a narcotics investigation conducted in Colorado Springs, Colorado by the Colorado Springs Police Department ("CSPD").   During the course of the investigation, CSPD Officer Wittmore learned through an anonymous informant that a person by the name of AKA Kid was selling methamphetamine.  (Docket #20 at ¶ 7.)  The informant indicated that AKA Kid's first name was "possibl[y]" Steve and his telephone number was (719)232-4336. (*Id*.)  With this information, Defendant Yohn, a detective, contacted AKA Kid by telephone on July 11, 2011, and arranged to purchase an eighth of an ounce of methamphetamine for $200.  (*Id*. at ¶ 8.)  The two met  in a Safeway parking lot the following day.  (*Id*. at ¶¶ 8, 10.)  While waiting in the parking lot, Detective Yohn observed the suspect arrive in a green Toyota 4-Runner bearing Colorado license plate 612-UXE.  (*Id*. at ¶ 9.)  The suspect was a passenger in the vehicle.  (*Id*.) Although Detective Yohn was later able to locate the owner of the vehicle, she did not inquire as to the identity of the suspect.  (*Id*.)

Detective Yohn met with the suspect for a second methamphetamine purchase on July 18, 2011. (*Id*. at ¶ 11.)  Following this transaction, she conducted a search in the CSPD mugshot photo system for males with the first name Steve between the ages of 25 and 28 in order to learn the identity of the suspect. (*Id*. at ¶ 12.)  Plaintiff's photo was included in the database due to a domestic dispute with his ex-wife in the summer of 2009.  (*Id*. at ¶ 14.)  Unlike the suspect with whom Detective Yohn interacted, Plaintiff's photo revealed that Plaintiff did not have neck tattoos.  (*Id*. at ¶ 20.) Additionally, Plaintiff weighed approximately 60 pounds less than the suspect and exhibited different facial features.  (*Id*. at ¶¶ 16, 21.)

Despite the various differences between Plaintiff's 2009 mugshot and the suspect, Detective Yohn identified Plaintiff as the person who sold her methamphetamine.  Based on this identification,

she applied for and received a warrant for Plaintiff's arrest on September 16, 2011.  (*Id*. at ¶ 4.)

Officers arrested Plaintiff on April 4, 2012, in Virginia. (*Id*.) After being held for seven days in

Virginia, law enforcement officers transported Plaintiff to Colorado.  (*Id*. at ¶ 5.)  Plaintiff spent

approximately four days in transit before posting bail upon his arrival in Colorado Springs. (*Id*.) All

charges were dropped on April 30, 2012, due to mistaken identity.  (*Id*.) In addition to spending

approximately ten days in custody, Plaintiff expended an estimated $14,000.00 in attorney's fees,

bail, hotel accommodations, and transportation as a result of the arrest.  (*Id*.)

According to Plaintiff, he is not the first to be mistakenly arrested by CSPD following an

officer's perusal of the mugshot database.  (*Id*. at ¶ 27.)  Plaintiff alleges that CSPD officers have

falsely identified and arrested at least four other persons.  (*Id*.)  One of the incidents resulted in a

lawsuit, which was dismissed.  In light of the notice these errors might provide, Plaintiff asserts that

the City has failed to train its officers on the appropriate use of the mugshot database and the

necessity of verifying a mugshot match by obtaining additional information from other sources.  (*Id*.

at ¶ 28.)

## II.    Procedural History

Plaintiff initiated this action on August 17, 2012, pursuant to 42 U.S.C. § 1983 and the

Fourth Amendment to the United States Constitution.  (Docket #1 at 5.)  Defendants responded to

the Complaint with a motion to dismiss, asserting, among other defenses, qualified immunity on

behalf of Defendant Yohn.  (Docket #10.)  Concurrently with the motion to dismiss, Defendants

sought a stay of discovery pending the resolution of the immunity defense.  Upon review of the

motion, the Court imposed a temporary stay of discovery through and including January 4, 2013.

Within the window permitted by Fed. R. Civ. P. 15(a)(1)(B), Plaintiff moved to amend his

pleading on October 29, 2012. (Docket #17.)  The Court accepted his Amended Complaint as filed,

and denied Defendants' motion to dismiss as moot.  (*See* dockets ##19, 20.)  Plaintiff's Amended

Complaint asserts a Fourth Amendment claim against Detective Yohn and a claim against the City

of Colorado Springs for failure to train Detective Yohn regarding the appropriate use of the mugshot

database and subsequent identification of a suspect.  (Docket #20 at 5-8.)

During the pendency of the stay, Defendants filed the pending Motion to Dismiss on

November 11, 2012. As in the first motion, Defendant Yohn asserts an entitlement to qualified

immunity on Plaintiff's Fourth Amendment Claim.  In particular, Defendants contend that Detective

Yohn took sufficient steps to verify the suspect's identity and that the warrant for Plaintiff's arrest

was supported by probable cause.  Despite the mistake, Defendants argue that Plaintiff has failed

to allege the requisite degree of intent to support a claim under Section 1983.  In Defendants' view,

Plaintiff's inability to establish a constitutional violation with respect to Detective Yohn also

eliminates Plaintiff's municipal liability claim against the City.  On this point, Defendants contend

that past incidents of mistaken identification with CSPD do not provide a basis for deliberate

indifference because it is not clear that mistaken identification of this sort is unconstitutional.

Plaintiff filed a timely response to Defendants' Motion on November 26, 2012.  (Docket

#22.)  The Motion was referred to this Court on December 5, 2012, and Defendants submitted their

reply brief on December 21, 2012.  (Docket #26.)  The Court held a Status Conference on January

4, 2013, to discuss the necessity of continuing to stay discovery. The Court determined that the stay

should be extended through January 31, 2013.  On February 5, 2013, the Court set a further Status

Conference on the issue of a stay for February 11, 2013.

## LEGAL STANDARDS

### I.    Dismissal for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the

context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011).

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC,* 656 F.3d at 1215. Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II.    Qualified Immunity

Detective Yohn asserts that she is entitled to qualified immunity for claims against her in her individual capacity. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal

quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.*  When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

For purposes of dismissal under Fed. R. Civ. P. 12(b)(6), a right is clearly established if, at the time of the alleged violation, "the contours of the right were sufficiently clear that a reasonable officer would understand that what he [or she] is doing violates that right."  *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009) (citations and internal quotations omitted). In the Tenth Circuit, "[a] plaintiff can demonstrate a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Id*.  With respect to the Fourth Amendment, this standard is not satisfied simply by identifying generalized principles of privacy or reasonableness.  *Kerns v. Bader*, 663 F.3d 1173, 1182 (10th Cir. 2011).  Although a plaintiff need not present a case "directly on point," a district court may not deny immunity "unless existing precedent has placed the statutory or constitutional question *beyond* debate."  *Id.* (emphasis in original).

The Supreme Court has discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson,* 129 S. Ct. at 816-22.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818. .

## **DISCUSSION**

Because the viability of both of Plaintiff's claims hinges on whether Detective Yohn violated Plaintiff's Fourth Amendment rights, the Court will begin there.  In light of Yohn's assertion of qualified immunity, which includes an evaluation of the merits, the Court will consider first whether Plaintiff has plausibly alleged a violation of his clearly established constitutional rights.  The Court will then determine whether Plaintiff's municipal liability claim should survive dismissal under Rule 12(b)(6).

## I.      **Fourth Amendment Claim Against Detective Yohn**

The Supreme Court has recently reiterated that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication the officers acted in an objectively reasonable manner [or with] 'objective good faith.'" *Messerschmidt v. Millender*, 123 S. Ct. 1235, 1245 (2012) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).  The shield of immunity conferred by the warrant is not entirely impervious; a suit may go forward where the absence of probable cause supporting the warrant "is so obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id*.  But "the threshold for establishing this exception is a high one, and it should be." *Id*.   Underlying this highly protective standard is the "sound presumption that the magistrate is more qualified that the police officer to make a probable cause determination." *Id*; *see also United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (citations and internal quotations omitted) ("Searches conducted pursuant to a warrant are favored, and, as such, the magistrate's determination that probable cause exists is entitled to great deference.").  Once a judge has decided that probable cause exists, the reviewing court's assessment is limited to determining whether the affidavit provided a "substantial basis" for the reaching this conclusion. *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009)

In support of their Motion to Dismiss, Defendants rely heavily on two cases in which courts found that an officer's mistaken identification of a plaintiff based on a mugshot photo could not support a Fourth Amendment claim: *Kennie v. White Plains Police Department's Vice Control Unit*, 108 F.3d 1369 (table), 1997 WL 138849 (2d Cir. 1997) and *Martinez v. City of Colorado Springs*, 11-cv-01664-RPM (unpublished) (D. Colo. Aug. 8, 2011) (docket #21-3).   Among other Fourth Amendment questions, the *Kennie* court considered whether an officer's identification of the plaintiff as someone who had previously sold him drugs violated the Fourth Amendment where the plaintiff's mugshot did not clearly display the plaintiff's face.   *Kennie*, 1997 WL 138849 at *2. Despite the poor quality of the mugshot, the *Kennie* court determined that the arrest was supported by probable cause.   *Id*.   However, the court indicated that the outcome could be different if plaintiff alleged that the officer *knew* that the individual who sold him drugs was not the same person depicted in plaintiff's mugshot.   *Id*.

Like the *Kennie* court, the court in *Martinez* also emphasized the mental state of an officer who, relying on a mugshot, mistakenly identified the plaintiff as a person from whom he had previously purchased drugs in an undercover transaction.   Despite the plaintiff's allegations of reckless, willful, and wanton misidentification, Judge Matsch found that the actions described in the amended complaint "at best" showed negligence. *Martinez*, docket #21-3 at 2. In dismissing the Fourth Amendment claim, Judge Matsch held the defendant's failure to take additional steps to better identify the participant in the drug sale was not sufficient to established liability for a constitutional violation.   *Id*.

Though it is not Defendants' burden to clarify the state of the law in this area, they have come forward with two non-authoritative cases suggesting that the Detective Yohn's mistake cannot support a claim under the Fourth Amendment.   Plaintiff, who is tasked with demonstrating that Detective Yohn violated his clearly established rights, has not provided any Supreme Court or Tenth

Circuit case showing that an officer violates the Fourth Amendment by negligently failing to confirm a suspect's identity after the officer believes he or she has found a matching mugshot. Plaintiff further concedes that he has not alleged intentional or reckless conduct on the part of Detective Yohn. (Docket #22 at 10.) Instead, Plaintiff spends the majority of his brief arguing that the physical differences undermined probable cause in such a way that no reasonable officer would believe probable cause supported the arrest warrant. He argues that *Martinez* is inapplicable because Judge Matsch did not address probable cause.

Applying the qualified immunity standard recently reiterated in *Kerns*, the Court is not persuaded that the inquiry is defined so narrowly. In particular, the Court does not find that Supreme Court or Tenth Circuit precedent clarifying the probable cause standard would have put a reasonable officer on clear notice that he or she would violate the constitution by seeking a warrant under the circumstances described in Plaintiff's Amended Complaint. Accepting the alleged facts as true, Detective Yohn disregarded several physical discrepancies between Plaintiff's mugshot photo and the person from whom she purchased narcotics, including the presence of tattoos where none existed before, additional weight, and differences in facial features (eyebrows and nose). Given the relative ease with which a person could obtain a tattoo or gain weight, the Court does not find that Detective Yohn's decision to disregard these changes clearly violated the Fourth Amendment. Though facial features are more immutable, Plaintiff cites no cases which establish liability for a misidentification on this basis. Additionally, Plaintiff has failed to identify any precedent from the Supreme Court, Tenth Circuit, or any other circuit that would require Detective Yohn to do more than she did in this case to confirm the identity of the suspect. Therefore, the Court recommends the District Court find that Detective Yohn is entitled to qualified immunity.

## II.    Municipal Liability Claim

Local governments can be liable under § 1983 "only for their *own* illegal acts." *Connick v.*

*Thompson*, 131 S.Ct. 1350, 1359 (2011) (internal quotation and citations omitted). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton*, 997 F.2d at 782 (citing *Monell*, 436 U.S. at 692). Rather, to state a § 1983 claim against a municipality, a plaintiff must sufficiently allege (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged. *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). In establishing the first requirement, a plaintiff may allege a municipal policy or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted). As the District Court observed in *Havens v. Johnson*, 2012 WL 871195, at *6 (D. Colo. March 13, 2012), a plaintiff alleging deliberate indifference "must ultimately show that the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to regard the risk of harm." (citing *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003)).

In this case, Plaintiff alleges that officers employed by the City have, on at least four occasions, falsely identified a suspect using the mugshot database. Three of those incidents did not precipitate any civil action, while the fourth, *Martinez*, *supra*, was dismissed by Judge Matsch on the merits. Nonetheless, Plaintiff contends that the City deliberately failed to train its officers on the proper identification of a suspect following a mugshot match.

While the Court agrees that the City had notice of the misidentifications, the Court is not persuaded that the conduct of which the City was aware was substantially certain to result in a violation of the Constitution.  The majority of cases in which the misidentification occurred resulted in no civil actions; and when presented to a federal court for judicial review, a Fourth Amendment claim asserting *reckless* misidentification was dismissed by a United States District Judge under Fed. R. Civ. P. 12(b)(6).  On these facts, the Court cannot plausibly find that the City was constitutionally obligated to implement training to avoid the *negligent* misidentification at issue in this case. Therefore, the Court recommends the District Court dismiss Plaintiff's claim against the City.

## CONCLUSION

As described above, the Court finds that Plaintiff has failed to plausibly allege that Detective Yohn violated his clearly established constitutional rights by obtaining an arrest warrant under the circumstances described in the Amended Complaint.  The Court recommends the District Court find that Detective Yohn is entitled to qualified immunity and dismiss her from this action.  Likewise, the Court believes that Plaintiff's claim against the City cannot survive a Rule 12(b)(6) challenge, because Plaintiff has not demonstrated that the City was on actual or constructive notice that its failure to prevent negligent misidentifications through additional training was substantially likely to result in a violation of the Constitution.  Therefore, the Court respectfully RECOMMENDS that Defendants' Motion to Dismiss [filed November 14, 2012; docket #21] be **GRANTED**.

Entered and dated at Denver, Colorado, this 5th day of February, 2013.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

11